UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RICHARD KEMNER, pro se, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )       No. 3:19-cv-20-TRM-HBG |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Petition for Writ of Injunction [Doc. 4],

Motion for Default Judgment [Doc. 9], and Motion for Summary Judgment [Doc. 17] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23].

Richard Kemner ("Plaintiff") seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner").  For

the reasons that follow, the Court will **RECOMMEND** that Plaintiff's Petition for Writ of

Injunction [Doc. 4], Motion for Default Judgment [Doc. 9], and Motion for Summary Judgment

[Doc. 17] be **DENIED**, and Defendant's Motion for Summary Judgment [Doc. 22] be

**GRANTED**.

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019,
during the pendency of this case.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d),
Andrew M. Saul is substituted as the Defendant in this case.

# I.    PROCEDURAL HISTORY

On April 19, 2011, Plaintiff's application for disability insurance benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, was granted, and he was found disabled as of December 31, 2008, due to limitations from his mental impairments and back pain.  [Tr.  11, 56–87, 155–64].   A Continuing Disability Review was conducted on August 30, 2012, and it was determined that Plaintiff continued to meet the requirements of Listing 12.03.  [Tr. 51].

However, on May 11, 2016, during a subsequent Continuing Disability Review, it was determined that Plaintiff was no longer disabled within the meaning of the Act as of April 30, 2016.  [Tr. 52–53].  Plaintiff was advised that he had sixty days to appeal the decision, as well as that he had ten days to request continuation of his benefits during his appeal.  [Tr. 91].  However, Plaintiff missed both deadlines, and then filed a request for reconsideration of the disability cessation on August 12, 2016 [Tr. 93], as well as a Statement of Good Cause for his Untimely Filing [Tr. 94–99].  Plaintiff waived his right to appear at the disability hearing.  [Tr. 93].

A state agency disability hearing officer reviewed Plaintiff's claim on November 20, 2017, and upheld the medical improvement finding, noting that "[a] review of the total evidence indicates th[at] significant medical improvement has occurred," and Plaintiff's impairments did not prevent him from doing other work.  [Tr. 104, 107–08].  After Plaintiff requested a hearing by an ALJ [Tr. 113], a hearing was held on May 2, 2018.  [Tr. 25–47].  Plaintiff appeared at the hearing without representation, although the ALJ reviewed Plaintiff's rights to representation, noted that Plaintiff signed a waiver of representation, and Plaintiff acknowledged that he wished to proceed without representation.  [Tr. 27–28].  On July 13, 2018, the ALJ found that Plaintiff was not disabled as of April 30, 2018 through the date of the decision.  [Tr. 11–20].   The Appeals Council denied

2

Plaintiff's request for review on November 8, 2018 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on January 1, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated December 31, 2008. This is known as the "comparison point decision" or CPD.[2]

2. At the time of the CPD, the claimant had the following medically determinable impairments: degenerative disc disease of spine, asthma and/or chronic obstructive pulmonary disease, unspecified psychotic disorder, and unspecified depressive disorder. These impairments were found to meet section 12.03 of 20 CFR Part 404—Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920 (d)).

3. As of April 30, 2016, the date the claimant's disability ended, the claimant had engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. During the year 2016, the claimant engaged in substantial gainful activity. However, from early 2017 through the date of this decision, it appears the claimant did not engage in substantial gainful activity. Because there is a period of 12 consecutive months after the claimant stopped performing substantial gainful activity, the sequential analysis for continuing disability continues for the period after 2016.

_____

[2] In his findings, the ALJ improperly refers to December 31, 2008 as the CPD. However, the most recent favorable decision in which the SSA found that Plaintiff was disabled was the August 30, 2012 determination continuing Plaintiff's disability benefits. [Tr. 51]. *See* 20 CFR §§ 404.1594(b)(7); 416.994(b)(1)(vii). The ALJ's analysis throughout the decision demonstrates that he used August 30, 2012 as the CPD.

3

5.   The medical evidence establishes that the claimant did not develop any additional impairments after the CPD.   Thus, the claimant's current impairments are the same as the CPD impairments.

6.   Since April 30, 2016 and through the date of this decision, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

7.   Medical improvement occurred as of April 30, 2016 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

8.   The medical improvement is related to the ability to work because, as of April 30, 2016, the claimant no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)).

9.   Beginning on April 30, 2016 and through the date of this decision, the claimant's impairments have continued to be severe in combination (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)).

10.   After careful consideration of the entire record, I find that, beginning on April 30, 2016, and through the date of this decision, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  The claimant can lift and carry, push and pull 50 pounds occasionally, and 25 pounds frequently.  With normal breaks in an eight-hour day, he can sit for six hours, and stand and/or walk for six hours; can occasionally climb ladders, ropes, and scaffolds; can occasionally stoop; can frequently climb ramps and stairs; and can frequently balance, kneel, crouch, and crawl.

11.   Beginning on April 30, 2016 and through the date of this decision, the claimant has been capable of performing past relevant work as a *still photographer*.  This work has not required the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

12.   The claimant's disability ended on April 30, 2016, and the claimant has not become disabled since that date through the date of this decision (20 CFR 404.1594(f)(7) and 416.994(b)(5)(vi)).

4

[Tr. 13–19].

## III. PLAINTIFF'S PETITION FOR WRIT OF INJUNCTION

Plaintiff seeks [Doc. 4] for the Court to issue a writ of injunction against the Commissioner to enjoin the deprivation of his Social Security benefits. Plaintiff claims that he is contesting the ALJ's decision that he was no longer disabled as of April 30, 2016, and the Commissioner denied Plaintiff's request for payment continuation. Lastly, Plaintiff states that he has an immediate need for Social Security benefits, as he has no other source or means to provide for medical bills, food, or shelter. As the Court previously detailed, Plaintiff missed the deadline to apply for continuation of his disability benefits during his appeal, and did not request continuation of his benefits until June 13, 2017. [Tr. 165–66].

Defendant objects [Doc. 14] to Plaintiff's petition for a writ of injunction, asserting that Plaintiff has not demonstrated that he is entitled to preliminary injunctive relief. Defendant claims that Plaintiff has not demonstrated that he has a strong likelihood of success on the merits, and the Court must affirm the ALJ's previous decision unless it was based on an incorrect legal standard or is unsupported by substantial evidence.

Preliminary injunctions are "extraordinary and drastic remed[ies] . . . never awarded as of right." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 453 (6th Cir. 2014) (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). A plaintiff seeking injunctive relief must show, either individually or in combination, that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor, and; (4) issuance of injunctive relief is in the public interest. *Platt*, 769 F.3d at 453 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). In considering the appropriateness of an injunction, the court balances these four

5

factors. *Id; see also Am. Civil Liberties Union Fund of Michigan v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015); *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). In addition, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) (quoting *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)). While a plaintiff need not prove his or her case in full to obtain injunctive relief, the proof necessary "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

First, the Court finds that Plaintiff has failed to establish that he is likely to succeed on the merits. Plaintiff claims that his benefits were terminated without due process. [Doc. 4]. However, the Commissioner's finding of medical improvement was subsequently upheld on reconsideration by a state agency officer, as well as after a disability hearing before an ALJ. The Appeals Council then denied Plaintiff's request for review. Plaintiff's sole assertion that his benefits were improperly terminated, even when read together with Plaintiff's remaining filings, does not establish that he is likely to succeed on the merits. *See, e.g.*, *Sizemore v. Soc. Sec. Admin.*, No. 1:05-CV-115, 2005 WL 3789966, at *1 (S.D. Ohio May 2, 2005) ("The conclusory statements presented in the motion are insufficient to show a likelihood of success on the merits or that, in the absence of injunctive relief, he would suffer irreparable harm."), *report and recommendation adopted by*, 2006 WL 406612 (S.D. Ohio Feb. 16, 2006).

Next, while Plaintiff has alleged an immediate need for his disability benefits due to an inability to pay for medical bills, food, or shelter, he has failed to document or support his request for injunctive relief. Therefore, the Court cannot recommend issuing a preliminary injunction on this factor. *See Marsh v. Colvin*, No. CV 15-11481, 2015 WL 12697634, at *3 (E.D. Mich. Apr.

6

27, 2015) ("Marsh's affidavit is extremely vague in terms of the nature of the harm he is suffering. He alleges financial difficulty only in the most non-descript and conclusory terms. He does not identify his present sources or amounts of income, his assets, or the amount of his monthly expenses and other liabilities. He does not state that he is facing eviction or litigation brought by creditors."), *report and recommendation adopted by*, 2015 WL 5817933 (E.D. Mich. Oct. 6, 2015).

The Court also balances the public interest in an individual who previously received disability benefits continuing his receipt of such benefits with the potential hardship on "the Administration if courts ordered it to pay benefits without first being certain that they were owed." *Id.* Lastly, the Court notes that while Plaintiff was eligible for continuation of his benefits at the administration level of the agency's review, his right to benefit continuation under the Social Security Act terminated after the Appeals Council denied Plaintiff's request for review. *See* 42 U.S.C. §§ 432(g)(2) and 1383(a)(7); *see, e.g.*, *Sizemore v. Soc. Sec. Admin.*, No. 1:05-CV-115, 2005 WL 3789966, at *1 (S.D. Ohio May 2, 2005), report and recommendation adopted by, 2006 WL 406612 (S.D. Ohio Feb. 16, 2006). Accordingly, weighing all relevant factors, the Court **RECOMMENDS** that Plaintiff's Petition for Writ of Injunction [Doc. 4] be **DENIED**.

## IV. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff also filed a Motion for Default Judgment [Doc. 9]. Plaintiff contends that he filed the present action on January 8, 2019[3], the United States Marshals Service served process on Defendant on February 14, 2019, and no counsel appeared on behalf of Defendant as of March 8, 2019. Plaintiff claims that under Federal Rule of Civil Procedure 55, default should be entered as

---

[3] The Court notes that Plaintiff's Complaint [Doc. 2] is dated as being signed on January 11, 2019.

7

there was not an Answer filed within twenty days after the service of process. Defendant responded in opposition [Doc. 10], stating that the Commissioner had sixty days to respond under Federal Rule of Civil Procedure 12(a)(2), as well as E.D. Tenn. L.R. 9.1(b).

First, Plaintiff's motion for default judgment is both procedurally and substantively improper, as Plaintiff has failed to obtain an entry of default from the Clerk of Court, demonstrating that Defendants have failed to plead or defend. *See* Fed. R. Civ. P. 55(a). If a default is entered, a plaintiff may then move the Court for entry of default under Rule 55(b). *See* Fed. R. Civ. P. 55(b). In this case, Plaintiff did not comply with the two-step process by seeking a Clerk's entry of default prior to seeking default judgment, and therefore, the instant motion is not properly before the Court. *See, e.g., Devlin v. Kalm*, 493 F. App'x 678, 685 (6th Cir. 2012) ("[I]t was procedurally improper for Plaintiff to move for entry of default judgment without first obtaining an entry of default from the clerk.").

Furthermore, Plaintiff has failed to establish that default judgment would be proper in this case. The Court notes that Defendant has not failed to answer or otherwise respond to the complaint. Fed. R. Civ. P. 12(a)(2) provides that the United States, its agencies or officers must serve an answer to a complaint within 60 days after service on the United States Attorney. *See also* E.D. Tenn. L.R. 9.1(b) (noting in Social Security cases that "the United States shall file its answer or other response within 60 days"). This period is applicable here because the Commissioner is an officer of the United States and the Social Security Administration is a federal agency. Under the applicable timeline, Plaintiff's summons was returned executed as served on the Commissioner, through the United States Attorney for the Eastern District of Tennessee, on February 14, 2019. [Doc. 8]. The Commissioner filed his Response to Plaintiff's Motion for Default Judgment [Doc. 10] on March 13, 2019, noting that the Commissioner intended to answer

8

or otherwise respond to Plaintiff's Complaint by April 15, 2019—sixty days from service on February 14, 2019. The record reflects that the Commissioner subsequently filed his Answer [Doc. 11] to Plaintiff's Complaint on April 15, 2019.

Lastly, when moving for a default judgment against an agency of the United States—such as the Social Security Administration—a default judgment is appropriate only if the plaintiff "establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d). "Entry of default against the federal government and its officers is particularly disfavored, and it may only occur if the plaintiff substantiates his claim for relief with acceptable evidence." *Spotts v. Hock*, No. 10–353–GFVT, 2011 WL 5024437, at *1 (E.D. Ky. Oct. 19, 2011). Here, "Plaintiff has not substantiated his 'claim or right to relief' on the merits by evidence satisfactory to this Court." *Sherrills v. Berryhill*, No. 1:17-CV-0030, 2017 WL 1399988, at *3 (N.D. Ohio Apr. 4, 2017), *report and recommendation adopted sub nom.*, *Sherrills v. Comm'r of Soc. Sec.*, 2017 WL 1387173 (N.D. Ohio Apr. 18, 2017). Therefore, for the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment [Doc. 9] be **DENIED**.

## V. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

9

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## VI. CONTINUING DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's initial application for disability benefits is evaluated pursuant to a five-step analysis in which the claimant bears the burden at the first four steps and the burden shifts to the Commissioner at step five who must prove that there is work available in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant who is found disabled and awarded benefits is thereafter subject to periodic reviews to determine her continued entitlement to benefits. 20 C.F.R. § 404.1594(a); *see Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 292 (6th Cir. 2006)

10

("[T]here is no presumption of continuing disability.") (citation omitted).

Whether a claimant continues to be disabled under Title II is determined pursuant to an eight-step analysis. 20 C.F.R. § 404.1594(f)(1)-(8). Specifically, the Commissioner must determine:

> (1) whether the claimant is performing substantially gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement that has decreased the medical severity of the claimant's impairments; (4) whether the medical improvement relates to the ability to work; (5) whether an exception to medical improvement applies; (6) whether the claimant's impairments in combination are severe; (7) whether the claimant has retained residual functional capacity and can perform past work; and (8) whether the claimant can perform any other substantial gainful activity.

*Delacotera v. Berryhill*, No. 3:16-CV-01464, 2017 WL 971935, at *3 (M.D. Tenn. Mar. 14, 2017) (citing 20 C.F.R. § 404.1594(f)(1)-(8)). Under Title XVI, the performance of substantial gainful activity is not a determining factor, therefore requiring a seven-step analysis. 20 C.F.R. § 416.994(b)(5).

The Commissioner bears the burden at each step, *id.*, and must establish that the claimant is no longer entitled to benefits "because the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling," 42 U.S.C. § 423(f). To meet his burden, the Commissioner must demonstrate that "(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity." *Id.*; *see* 20 C.F.R. § 404.1594(a) ("We must determine if there has been any medical improvement in your impairment(s) and, if so, whether

11

this medical improvement is related to your ability to work."). "If substantial evidence supports both prongs, then the [Commissioner] correctly terminated [the claimant's] benefits." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

## VII.   ANALYSIS

Plaintiff contends that the ALJ's disability decision is not supported by substantial evidence in several regards. The Commissioner has compiled the arguments set forth in Plaintiff's Motion for Summary Judgment [Doc. 17], as well as other pleadings in this case. As Plaintiff is proceeding pro se in the present action, the Court will liberally construe Plaintiff's motion for summary judgment and other pleadings. After reviewing Plaintiff's filings, the Court agrees with the Commissioner's compilation of Plaintiff's arguments, and will address them largely as categorized in Defendant's Memorandum in Support of Motion for Summary Judgment [Doc. 23].

### A.    Plaintiff's Due Process and Full and Fair Hearing Arguments

Plaintiff asserts that "[t]he ALJ did not give Plaintiff a full or [fair] hearing," as well as that the Commissioner "engaged in a pattern of willful[,] wanton and reckless" behavior or intentionally and maliciously deprived him of his disability benefits. [Doc. 17 at 1]. Ultimately, Plaintiff challenges the cessation of his disability benefits after the continuing disability review without an evidentiary hearing. [*Id.* at 3]. Plaintiff cites to the alleged actions of conspirators Levita Harris and Juanita Jackson, as well as that the Commissioner acted in deliberate indifference by concealing material facts, was deliberately indifferent to his need for medical attention, and that such actions constituted cruel and unusual punishment. [*Id.*].

The Commissioner first responds that Plaintiff's claims are properly considered only under 42 U.S.C. § 405(g) and 1383(c), and thus sovereign immunity applies with the exception of Plaintiff's claim for review of the SSA's final decision upholding the termination of his disability

12

benefits.  [Doc. 23 at 18].

### 1.    Sovereign Immunity

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit."  *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 425 (6th Cir. 2016) (internal quotation marks omitted).  "In the Social Security context, the United States has lifted its sovereign immunity and permitted private parties to sue in accordance with Section 405(g) and 405(h) of the Social Security Act." *Martin v. Colvin*, No. 3:14-0209, 2014 WL 5607028, at *5 (M.D. Tenn. Nov. 4, 2014), *report and recommendation adopted by*, 2015 WL 1303634 (M.D. Tenn. Mar. 23, 2015) (citing *Matthews v. Eldridge*, 424 U.S. 319, 327 (1976)).

42 U.S.C. § 405(g) provides, in relevant part, that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Additionally, 42 U.S.C. § 405(h) states, in part:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Therefore, Plaintiff's claims alleging willful and intentional infliction of emotional distress, that the agency employees conspired to deprive him of his benefits, and deliberate indifference to his serious medical needs are barred by sovereign immunity.  *See Kennedy v. Comm'r of Soc. Sec.*, 202 F.3d 268 (Table), 1999 WL 1336080, at *2 (6th Cri. Dec. 21, 1999); *see, e.g.*, *Thompson v. United States Soc. Sec. Admin.*, No. 4:18-CV-128-JLH-JJV, 2018 WL 1183390,

13

at *2 (E.D. Ark. Mar. 7, 2018) ("An action brought against a federal agency—the SSA in this case—is essentially one brought against the United States. Therefore, the SSA cannot be sued absent an express waiver of that immunity."), *report and recommendation adopted sub nom.*, *Thompson v. United States*, 2018 WL 1460864 (E.D. Ark. Mar. 23, 2018); *Martin*, 2014 WL 5607028, at *6 ("The plaintiff's contention that she is merely seeking to vindicate constitutional rights and is not directly seeking benefits does not negate the fact that her claims arise under the Social Security Act.").

"Additionally, there is no jurisdiction to pursue constitutional damages against federal officers pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 (1971), in actions arising under the Social Security Act." *Id.* at *8 (citing *Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988)). Accordingly, Plaintiff can "only seek judicial review of the Commissioner's 'final decision'" under 42 U.S.C. §405, and the final decision was obtained after the Appeals Council denied Plaintiff's request for review. *See id.*

Plaintiff also seeks for the Court to "[a]sk the Attorney General to determine any benefits available to the Plaintiff from FEMA for loss of property following a Natural disaster, and also whether Plaintiff is able to Have the Small Business Administration reconsider his Natural Disaster loan following a favorable ruling on his disability claim." [Doc. 17 at 13]. Similarly, Plaintiff asks for the Court to "ask the Attorney General to make funds available as to the Plaintiff for construction loss from Defendant Jeremy Schmidt [as] restitution for criminal tax fraud." [*Id.*]. However, these requests for relief, as well as Plaintiff's challenge to the previously awarded backpay, also fail as they are not properly before the Court at this time, and the Court's jurisdiction is limited to a review of the cessation of Plaintiff's disability benefits.

### 2. Plaintiff's Right to a Full and Fair Hearing

14

The Court will also consider Plaintiff's claims that the ALJ did not provide him with a fair hearing and concealed material facts under the scope of potential bias. The Commissioner responds that Plaintiff has failed to establish that the ALJ subjected him to unfair treatment or that his hearing was biased. [Doc. 23 at 18].

"When considering a claim that an ALJ's decision is colored by bias, the Court must begin with the 'presumption that policymakers with decision making power exercise their power with honesty and integrity.'" *Campbell v. Colvin*, No. 13-25-GFVT, 2014 WL 4928903, at *2 (E.D. Ky. Sept. 30, 2014) (quoting *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363–64 (6th Cir. 2004)) (other citations omitted). The burden of overcoming this presumption rests with the party making the assertion of bias, and "the presumption can be overcome only with convincing evidence that a 'risk of actual bias or prejudgment' is present." *Id.* (citing *Collier*, 108 F. App'x at 363–64). Further, "any alleged prejudice on the part of the decision maker must be evidence from the record and cannot be based on speculation or inference." *Id.*

However, the Court finds that any argument that the ALJ was prejudiced in the present case is waived, as Plaintiff does not assert specific facts to claim that the ALJ was biased or concealed material facts. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)). Further, the Sixth Circuit has repeatedly found that even an ALJ's "unwarranted skepticism" towards a claimant, as well as an ALJ's "obvious frustration, emotional mannerisms and abruptness" are insufficient to establish actual bias. *Collier*, 108 F. App'x at 364 (citing *Wells v. Apfel*, 234 F.3d 1271 (Table), 2000 WL 1562845, at

15

*5 (6th Cir. 2000)). Therefore, even liberally construing Plaintiff's claim, the Court finds that Plaintiff has waived any argument related to the potential prejudice of the ALJ, and further, has failed to establish the convincing evidence of actual bias necessary to overcome the presumption of impartiality.

Next, the Court will address Plaintiff's argument that he was not provided with a full and fair hearing. The Commissioner asserts that the SSA ordered physical and psychological consultative examinations, allowed Plaintiff to request a hearing before an ALJ, and the ALJ fulfilled his duty to ensure that Plaintiff received a full and fair hearing. [Doc. 23 at 19–20].

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel,* 530 U.S. 103, 110–11 (2000) (citing *Richardson v. Perales,* 402 U.S. 389, 400–01 (1971)). An ALJ is responsible for "ensuring that every claimant receives a full and fair hearing[.]" *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Further, the ALJ has a special, heightened duty to develop the record "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with the hearing procedures[.]" *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051–52).

"To satisfy this special duty," the Sixth Circuit has instructed that, "the administrative law judge must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Lashley*, 708 F.2d at 1052 (internal quotation and citation omitted). The duty to develop the record is balanced, however, with the fact that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d

16

211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). Although the Court must "scrutinize the record with care" where the claimant appears before the ALJ without counsel, the lack of counsel does not automatically result in reversal. *Lashley,* 708 F.2d at 1052. Ultimately, there is no bright-line rule, but rather the determination of whether an ALJ has failed to fully develop the record must be made on a case-by-case basis. *Id.*; *see, e.g.*, *Cox v. Comm'r of Soc. Sec.,* 615 F. App'x 254, 262 (6th Cir. 2015).

Plaintiff fails to expand on this claim, but liberally construing his brief, the Court will review the procedural posture of Plaintiff's continuing disability review and the ALJ's actions at the disability hearing. As the Court has previously detailed, Plaintiff missed the deadlines to appeal the Commissioner's decision that he was no longer disabled as of April 30, 2016, as well as to request continuation of his benefits during his appeal. [Tr. 91]. The Commissioner granted Plaintiff's statement of good cause, and subsequently allowed him to appeal the disability decision. Plaintiff then waived his right to appear at the disability hearing on reconsideration.

Plaintiff then appeared before the ALJ on May 2, 2018. First, the ALJ acknowledged that Plaintiff was appearing without counsel, as well as that he had signed a waiver of representation. [Tr. 27]. The ALJ then informed Plaintiff of his right to representation, that a representative would assist in obtaining medical records and presenting the evidence in a favorable light, the typical fee structure behind attorney representation, as well as the potential opportunity of free legal representation. [Tr. 27–28]. The ALJ also informed Plaintiff of the potential difficulties in finding an attorney in medical improvement cases. [Tr. 28]. Plaintiff then informed the ALJ that he wished to proceed without representation, as well as that "[w]hen I was granted the disability [previously], I didn't have counsel at the time," and therefore he didn't "think it necessary at this moment for representation." [*Id.*].

17

During the hearing, the ALJ detailed the disability standards to Plaintiff, as well as stated that he was not bound by the SSA's prior decision and had an "independent duty to make [his] own decision based upon the law and the evidence presented." [Tr. 29–30]. The ALJ reviewed the submitted medical records with Plaintiff, noting the last treatment records were in "September 2015," and asked if there was "any more treatment records after September 2015." [Tr. 30]. The ALJ then questioned Plaintiff about additional treatment records, including from his chiropractor and x-rays that could be obtained after the hearing. [Tr. 31]. Additionally, the ALJ questioned Plaintiff about his activities of daily living, employment records, and physical and mental health problems. [Tr. 32–40]. The ALJ specifically further inquired about Plaintiff's back issues and depression and anxiety. [Tr. 39–42]. After explaining the role of the vocational expert ("VE") to Plaintiff [Tr. 42], and obtaining hypotheticals from the VE, the ALJ then asked Plaintiff whether he had any further questions [Tr. 45].

Ultimately, the Court finds that the ALJ satisfied his special, heightened duty to develop the record, even though Plaintiff was proceeding without representation, and that Plaintiff received a full and fair hearing. Initially, Plaintiff has failed to demonstrate how his waiver of the right to counsel at his hearing was not knowing or voluntary. "The Sixth Circuit made clear in *Duncan* that when a plaintiff is notified of her right to counsel in writing prior to the administrative hearing, and the ALJ[ ] clarifies waiver of that right before proceeding with the hearing, the ALJ has satisfied her duty in advising a plaintiff of her right to representation." *Atwood v. Comm'r of Soc. Sec.*, No. 1:13-CV-703, 2014 WL 1794580, at *4 (N.D. Ohio May 6, 2014) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)). Plaintiff signed a waiver of his right to representation and proceeded to affirm his desire to continue after being questioned by the ALJ and informed of the specific benefits of representation. *See Rutherford v. Astrue*, No. 3:10-

18

CV-376, 2011 WL 4014431, at *7 (M.D. Tenn. Sept. 9, 2011) ("Because the ALJ confirmed that Plaintiff had read, understood, and signed the waiver of right to representation, and because the ALJ confirmed that Plaintiff intended to represent herself at the hearing and wanted to proceed, the ALJ complied with *Duncan* and is not required to do more.").

Plaintiff claims that "[a]lthough there is no evidence in [the] record of [P]laintiff's prior medical and psychological history [of] mental illness," he has resided in multiple group homes, institution, prisons, and treatment facilities. [Doc. 17 at 3]. However, the ALJ questioned Plaintiff about his treatment records which were not in the medical record, and the SSA ordered physical and psychological consultative examinations. Further, Plaintiff failed to submit a function report during the continuing disability review proceedings.

The ALJ questioned Plaintiff in detail about his activities of daily living and the reasons he believed his medical conditions had not improved. *See Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 291 (6th Cir. 2014) ("In addition, the ALJ properly developed the record by questioning Thomas about her background, medical issues, and activities and by consulting with the vocational expert concerning Thomas's work capacity."). Further, the ALJ reviewed Plaintiff's treatment record, asked whether any additional medical evidence existed, and obtained these medical records after the hearing. Additional factors include that Plaintiff had a high school education level and represented to the ALJ that he had proceeded without representation in his prior application for disability benefits. Accordingly, the Court finds that Plaintiff's allegation that he did not receive a full and fair hearing does not constitute a basis for remand.

### B. ALJ's RFC Determination

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence in several regards. Plaintiff maintains that "[t]he ALJ did not properly consider reports

19

from the doctors that treated Plaintiff," as well as that the ALJ did not properly consider the combination of his impairments. [Doc. 17 at 1]. Plaintiff also claims that the ALJ failed to appropriately consider his testimony about his pain in the disability decision.

The Commissioner responds that the ALJ properly evaluated the medical record and his RFC determination is supported by substantial evidence. [Doc. 23 at 22]. Additionally, the Commissioner asserts that the ALJ properly found that Plaintiff's medically determinable mental impairments were non-severe, as well as that the ALJ reviewed the respective medical opinions and Plaintiff's activities of daily living to evaluate Plaintiff's physical impairments. [*Id.* at 22– 23]. Lastly, the Commissioner submits that the ALJ's evaluation of Plaintiff's subjective complaints of pain is supported by substantial evidence. [*Id.* at 24].

In the RFC determination, the ALJ found that Plaintiff had the RFC to perform medium work as defined in the applicable regulations, after reviewing the opinion evidence and medical record. The Court will first review the ALJ's treatment of Plaintiff's subjective allegations of pain, and will then address Plaintiff's broad claims that the RFC is not supported by substantial evidence.

**1. ALJ's Treatment of Plaintiff's Subjective Complaints of Pain**

Plaintiff asserts that the ALJ did not properly consider his testimony about his pain. [Doc. 17 at 5]. In the RFC determination, the ALJ reviewed Plaintiff's testimony at the disability hearing, noting that Plaintiff stated that he lived with his girlfriend and her mother, had a high school education, and last worked as a photographer in 2016. [Tr. 16]. The ALJ detailed that Plaintiff reported his primary problems as depression, unspecified psychotic disorder, chronic lower back pain, and COPD and asthma. [Tr. 16]. The ALJ reviewed that Plaintiff also listed issues with concentration, that he suffered abuse while in prison, as well as that he has chronic lower back pain and poor dental hygiene. [*Id.*]. Additionally, the ALJ detailed Plaintiff's

testimony on his activities of daily living, including that he wakes up, watches television, makes something to eat, often is forced to lie back down, and he is able to do some household chores and driving. [*Id.*].

However, the ALJ found that while Plaintiff's medically determinable impairments could be reasonably expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible as they are inconsistent with the RFC determination. [*Id.*]. The ALJ noted that Plaintiff failed to cooperate with the evaluative process, as he did not provide a function report at any level. [Tr. 17]. Additionally, the ALJ detailed that Plaintiff testified that he continued to smoke a pack of cigarettes per day, despite his complaints of asthma, bronchitis, and COPD. [*Id.*]. Further, the ALJ noted that Plaintiff was able to work significantly as a wedding photographer in 2016, despite his long-standing reports of psychological symptoms and back pain. [*Id.*].

Next, the ALJ reviewed how Plaintiff's testimony of disabling symptoms was inconsistent with the medical opinion evidence. The ALJ assigned some weight to the opinion of consultative physician, Robert Blaine, M.D., as "[t]he exam results substantiate that the claimant can perform medium work with postural limitations." [*Id.*]. The ALJ assigned great weight to the opinion of nonexamining state agency physician Thomas Thrush, M.D., reviewing that Dr. Thrush noted that Plaintiff has worked since 2000 despite complaints of lower back pain, has never participated in treatment for his diabetes, and the mild examination findings at Plaintiff's consultative examination with Dr. Blaine. [*Id.*]. With respect to Plaintiff's mental impairments, the ALJ gave great weight to the opinion of consultative psychologist Dr. Brian Humphreys, as Plaintiff indicated that his psychotic symptoms were not as bad as his previous consultative examination in 2012, he was not taking any psychotropic medication, and he did not experience psychotic

21

symptoms during the interview. [*Id.*]. Lastly, the ALJ gave great weight to the opinion of state agency psychologist Dr. Edward Sach, who opined that Plaintiff's mental impairments were non-severe. [Tr. 18].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation, and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an

22

individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

As the Court has already reviewed, in the disability decision, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his symptoms] were not credible to the extent they are inconsistent with the residual functional capacity assessment." [Tr. 16]. "Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

Here, the Court finds that the ALJ appropriately considered the medical record when reviewing the intensity, persistence, and limiting effects of Plaintiff's symptoms and testimony about his pain. The ALJ detailed how Plaintiff's statements were inconsistent with the RFC determination, including by noting Plaintiff's failure to cooperate with the evaluative process, continued smoking habit, and work history despite complaints of back pain. Further, the ALJ reviewed the respective medical opinions, including physical and psychological consultative examinations, and detailed how they were more consistent with the medical record than Plaintiff's statements regarding his symptoms. *See, e.g.*, *Marcum v. Astrue*, No. 3:10-CV-122, 2011 WL 4398001, at *7 (E.D. Tenn. Aug. 3, 2011) ("The ALJ did not improperly rely on the Plaintiff's reported daily activities or mischaracterize these activities, nor did he rely on a single medical opinion to the exclusion of the other opinion evidence in the record."), *report and recommendation adopted by*, 2011 WL 4433146 (E.D. Tenn. Sept. 20, 2011).

23

An ALJ is "not required to discuss all the evidence, as long as her factual findings as a whole show that she implicitly considered the record as a whole." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006)). Ultimately, it is not for this Court to "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Therefore, the Court finds that the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms were not credible is supported by substantial evidence.

### 2. ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff broadly claims that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff asserts that he suffers from schizophrenia, hearing voices, narcissism, hubris, obsessive compulsive disorder coupled with memory loss, depression, anxiety, attention deficit disorder, social anxiety, and lack of concentration, among other related mental impairments. [Doc. 17 at 2]. With regard to his physical impairments, Plaintiff also asserts that the ALJ failed to consider his respiratory impairments, through his asthma and COPD, as disabling. [*Id.* at 5].

First, Plaintiff fails to state which reports from treating doctors that the ALJ failed to consider, and the ALJ assisted him in obtaining treatment records following the disability hearing. In the RFC determination, the ALJ detailed that Plaintiff alleged continuing disability primarily due to his depression, unspecified psychotic disorder, chronic lower back pain, and asthma or COPD. [Tr. 16]. The ALJ discussed Plaintiff's testimony at the disability hearing, including that he had a high school education and worked substantially as a photographer in 2016. [*Id.*]. As the Court has already detailed, the ALJ then reviewed Plaintiff's statements concerning his symptoms, and detailed how they were inconsistent with the RFC determination.

24

Next, with regard to the medical opinion evidence, Plaintiff was consultatively examined by Dr. Blaine on February 13, 2017. [Tr. 380–382]. Dr. Blaine noted Plaintiff's allegations of back pain, diabetes, and asthma. [Tr. 380]. On examination, Plaintiff's flexion of the cervical spine was normal, with extension to 45 degrees, lateral rotation to 60 degrees to either side, and lateral flexion to 30 degrees either side. [Tr. 381]. Plaintiff's sensation was intact to light touch in all four extremities and symmetrical, and his grip strength was 5/5 bilaterally. [*Id.*]. Further, Plaintiff's flexor and extensor strength of both upper and lower extremities was 5/5, his straight leg raise was negative bilaterally, and his gait, station, and tandem walk were normal. [Tr. 382]. Dr. Blaine also reviewed a previous August 8, 2012 disability examination of Plaintiff. [*Id.*]. Therefore, Dr. Blaine diagnosed low back pain secondary to disc disease, diabetes, and asthma. [*Id.*]. He opined that Plaintiff could stand or walk for six hours in an eight-hour day, limited by pack pain and dyspnea; lift and carry ten pounds infrequently and forty or fifty pounds infrequently; and he could sit for eight hours with reasonable rest breaks. [*Id.*].

As the Court previously detailed, the ALJ assigned some weight to this opinion because Dr. Blaine examined Plaintiff personally, and the opinion was consistent with the examination findings—including Plaintiff's 5/5 grip strength bilaterally, normal strength in all four extremities, negative straight leg raise bilaterally, and normal heal and toe walk and the ability to squat two-thirds of the way to the floor. [Tr. 17]. The ALJ found that "[t]he exam results substantiate that the claimant could perform medium work with postural limitations." [*Id.*].

The ALJ also assigned great weight to the opinion of state agency physician, Dr. Thrush, who opined on March 2, 2017 that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for six hours in an eight-hour workday, as well as sit six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds, as well

25

as stoop; and frequently climb ramps and stairs, balance, kneel, crouch, and crawl. [Tr. 17]; *see* [Tr. 399–408]. The ALJ detailed how Dr. Thrush's opinion was consistent with the medical evidence, including Plaintiff's ability to work despite complaints of low back pain since 2000, lack of treatment for alleged diabetes, continued smoking habit, and consistency with Dr. Blaine's examination findings. [Tr. 17].

When reviewing Plaintiff's psychological symptoms, the ALJ assigned great weight to the opinion of consultative psychologist Dr. Humphreys. [*Id.*]. Dr. Humphreys consultatively examined Plaintiff on January 25, 2017, and diagnosed unspecified schizophrenia spectrum and other psychotic disorder, as well as unspecified depressive disorder. [Tr. 373–78]. Dr. Humphreys reviewed Plaintiff's treatment history, activities of daily living, current signs and symptoms, and ability to relate, as well as performed a mental status examination. [*Id.*]. Dr. Humphreys assessed that Plaintiff "does not appear to be significantly limited in his abilities to understand, remember, concentrate, or persist in a job setting," and that "he does not appear to be more than mildly limited in his abilities to interact or adapt adequately in a job setting." [Tr. 376]. Lastly, Dr. Humphreys opined that Plaintiff indicated that his psychotic symptoms were not as bad as when he was interviewed in 2012, and it was especially worth noting that he did not experience psychotic symptoms during the interview, as he was not currently taking any psychotropic medication. [Tr. 377]. Additionally, Dr. Humphreys noted that due to Plaintiff's comments about previously working as a desk clerk at a hotel in 2015, until the hotel closed, as well as working as a wedding photographer, combined with his other comments and behavior during the interview, "it appears that he is mentally capable of handling some kind of work." [*Id.*]. As the Court previously detailed, that ALJ gave great weight to this opinion, noting that Dr. Humphreys interviewed Plaintiff in a clinical setting, and his opinion was consistent with the examination findings and

26

longitudinal record.  [*Id.*].

The ALJ also gave great weight to the opinion of state agency psychologist Dr. Sachs, who opined on March 2, 2017 that Plaintiff had only mild limitations in each of the paragraph B criteria, despite diagnoses of schizophrenia spectrum disorder and depressive disorder.  [Tr. 18]; *see* [Tr. 383–98]. The ALJ stated that Dr. Sachs' opinion was consistent with Dr. Humphrey's examination findings, as well as Plaintiff's presentation at office visits and at the hearing.  [Tr. 18].

Ultimately, although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").  "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work."  *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)).  The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record.  *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

Here, the ALJ reviewed the respective medical opinions in the record, as well Plaintiff's

27

testimony concerning the effect of his symptoms. However, the ALJ found that the RFC determination was "supported by the objective medical evidence, the degree, type, and frequency of treatment, the wide range of daily activities, the work history, the lack of cooperation, the non-compliance with medical advice, and the longitudinal record as a whole." [Tr. 18]. While Plaintiff also claims that the ALJ failed to consider the combination of his impairments, the ALJ reviewed Plaintiff's severe and non-severe impairments in the RFC determination. Lastly, as the Court has previously detailed, the ALJ properly reviewed Plaintiff's mental and respiratory impairments which he claims the ALJ ignored.

Accordingly, the ALJ's finding that Plaintiff could perform medium work was within his "zone of choice," as the ALJ reviewed the medical record and stated the rationale for his RFC determination. *See Blakley*, 581 F.3d at 406. The ALJ's RFC determination is supported by substantial evidence, and Plaintiff's allegations of error do not constitute a basis for remand.

### C. Step Five—Other Work

Plaintiff asserts that the VE failed to provide evidence that Plaintiff could perform the essential job functions and the duties of "floor sweeper" and "barista." [Doc. 17 at 1]. Plaintiff contends that the VE failed to consider that he had "arthritis, carpal tunnel, and a bad back so anything using the plaintiff['s] hands and sitting and standing for large periods of time [is] basically out of the question." [*Id.* at 4]. In his Complaint, he also asserts that he would be unable to perform the requirements of these jobs because he has lost his teeth and is afraid to smile. [Doc. 2 at ¶¶ 14–15]. The Commissioner responds that Plaintiff does not contest the ALJ's finding that he could perform his past work as a photographer, as well as that the ALJ was not required to include limitations he previously found not supported by the record in the hypothetical questions posed to the VE. [Doc. 23 at 25].

28

At step five, the Commissioner has the burden of proving "that the claimant retains the residual functional capacity to perform 'substantial gainful work which exists in the national economy.'" *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). Generally, the Commissioner may meet his burden by applying the regulation's medical-vocational guidelines ("the grid"), which indicates whether a claimant is "'disabled' or 'not disabled' based on the claimant's age and education and on whether the claimant has transferable work skills." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). However, if a claimant suffers from non-exertional limitations, or he cannot perform substantially all of the exertional demands of a job at a given exertional level, the grid provides only a framework for the Commissioner's decision, and he must utilize other evidence, such as testimony from a VE, to determine whether the claimant can perform other work in the national economy given the claimant's RFC. *Id.* (citations omitted).

Here, as the Commissioner detailed, the ALJ first found that beginning on April 30, 2016, and through the date of the decision, Plaintiff was capable of performing his past relevant work as a still photographer. [Tr. 18]. The VE testified that an individual with the same age, education, and prior work experience of Plaintiff, as well as the same limitations in Plaintiff's RFC, could perform Plaintiff's past relevant work as a still photographer. [Tr. 44]. The VE then testified that such an individual could also perform other work in the national economy, including as a coffee maker, laboratory equipment cleaner, and industrial sweeper/cleaner. [Tr. 44–45].

Ultimately, the ALJ was not required to include limitations in the hypothetical questions to the VE which are not supported by the record or otherwise not credible. Here, the ALJ found that Plaintiff had the RFC to sit for six hours, and stand and/or walk for six hours, with normal breaks, in an eight-hour workday. [Tr. 15]. The Court has already found that the ALJ's RFC

29

determination was supported by substantial evidence. Therefore, the ALJ properly relied on the VE's testimony that work existed for an individual with the same limitations as those incorporated into Plaintiff's RFC. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). Accordingly, because the hypothetical question presented to the VE accurately represented Plaintiff's RFC, the Court finds that substantial evidence supports the ALJ's step five finding that Plaintiff can perform other work in the national economy. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

### D. Newly Submitted Evidence

Plaintiff also attaches additional medical records to his Complaint [Doc. 2-1], filed on January 11, 2019, which were not before the ALJ. Several of the attached records are decisions and correspondence with the SSA, as well as treatment notes already in the medical record.

After reviewing the attached records, newly-submitted records include the approval of a filling and a crown from Bethany Thomas, D.D.S., and treatment notes from Dr. Thomas on April 30, 2015, May 4, 11, and 12, 2015, as well as February 16, 2017. [*Id.* at 71–77]. Additionally, Plaintiff includes emergency room records from Covenant Health Horizon Emergency Care on January 30, 2017, in which he reported to the emergency room with a right-side dental abscess, and stated that he could not afford to go to a dentist. [Tr. 78–86]. Treatment notes indicate poor hygiene and a broken right tooth, and Plaintiff reporting that he had a toothache for two days, but no chronic dental problems. [*Id.*]. After Plaintiff was released from the emergency room, he then

30

saw Dr. Thomas on February 16, 2017 for x-rays and an oral evaluation. [Tr. 71–77]. The remaining attachments to Plaintiff's Complaint include documents and correspondence related to Plaintiff's lawsuit against Jeremy Schmid in the Sevier County Circuit Court, as well as other financial information. The Court liberally construes the submission of these medical records as Plaintiff asserting that new evidence exists regarding his dental problems that supports a sentence-six remand pursuant to 42 U.S.C. § 405(g).

The Court may not consider new evidence that was not before the ALJ in determining whether to uphold, modify, or reverse the ALJ's decision. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). However, under 42 U.S.C. § 405(g), the Court may remand the case and order additional evidence to be taken into account upon a showing that there is new evidence (1) which is "material" and (2) that there is "good cause" for the failure to incorporate such evidence into the record in the prior proceeding. *Id.* (citing 42 U.S.C. § 405(g) and *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). The proponent of the new evidence bears the burden of proving all three elements. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 589 (6th Cir. 2005).

Evidence is considered "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting *Elliott v. Apfel*, 28 F. App'x 420, 424 (6th Cir. 2002)). "Material evidence" exists if there is a "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.

1988)).  Moreover, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." *Pickard*, 224 F. Supp. 2d at 1171.  Finally, "good cause" is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357.  "The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." *Pickard*, 224 F. Supp. 2d at 1171.

However, the newly submitted medical evidence is not material, as Plaintiff does not allege how the dental records would alter the ALJ's disability determination.  The ALJ reviewed that Plaintiff listed poor dental hygiene as a medical issue, but also that he does not brush or floss as recommended.  [Tr. 16].  Plaintiff's discharge records from the emergency room list his condition as stable, and that he should arrange for a follow-up appointment with his primary care provider for his hypertension, while also noting his toothache and dental abscess.  [Doc. 2-1 at 80].  However, the same records reveal that although Plaintiff complained of a toothache, he had no chronic dental problems.  [*Id.*].  The submitted records from Dr. Thomas on February 16, 2017 note only an oral evaluation and x-ray of his teeth.  [*Id.* at 73].  Therefore, Plaintiff has not "adequately explain[ed] why or how the records submitted would have reasonably persuaded the ALJ to make a different decision for the period at issue." *Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 WL 4210619, at *5 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted by*, 2012 WL 4210616 (E.D. Mich. Sept. 20, 2012).

Further, Plaintiff has failed to establish good cause for his failure to include these dental treatment notes in the medical record.  Although Plaintiff is proceeding pro se, Plaintiff did not mention his dental treatment to the ALJ during the May 2, 2018 hearing, even after the ALJ reviewed Plaintiff's treatment history and ultimately assisted in obtaining treatment records from

32

Plaintiff's chiropractor. [Tr. 30]. *See Defrank v. Colvin*, No. 4:15-CV-1473, 2016 WL 3898441, at *5 (N.D. Ohio July 19, 2016) ("Although a Plaintiff's pro se status 'is relevant to the good cause inquiry,' it is not alone, sufficient to show good cause.") (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006)) (internal quotation marks omitted). The Court also notes that the submitted dental records were in existence at the time of the May 2, 2018 hearing.

Ultimately, the newly submitted medical evidence is not material, as Plaintiff has failed to demonstrate how the ALJ would have reached a different conclusion had he been presented with the dental records. Further, the Court's review of Plaintiff's dental records does not establish a continuing dental problem that would have impacted the RFC determination. Lastly, Plaintiff has failed to provide good cause for not discussing his dental treatment with the ALJ at his disability hearing. Therefore, even liberally construing Plaintiff's attachment of subsequent medical records as requesting a sentence-six remand, Plaintiff has failed to demonstrate that the new medical evidence is material to the ALJ's decision. The Court notes that if Plaintiff's condition worsened after the administrative hearing or disability decision, the appropriate remedy would be to initiate a new claim for benefits as of the date that his condition rose to the level of a disabling impairment. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).

**VIII. CONCLUSION**

Based on the foregoing, the Court **RECOMMENDS**[4] that Plaintiff's Petition for Writ of

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous,

Injunction [Doc. 4], Motion for Default Judgment [Doc. 9], and Motion for Summary Judgment [Doc. 17] be **DENIED**, and Defendant's Motion for Summary Judgment [Doc. 22] be **GRANTED**.

Respectfully Submitted,

*Bruce Guyton*

United States Magistrate Judge

---

conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).